IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

MATTHEW CONTRERAS,                         §
Institutional ID No. 2319954,              §
                                           §
          Plaintiff,                       §
                                           §
v.                                         §   CIVIL ACTION NO. 5:21-CV-038-BQ
                                           §
NFN ZEKE, *et al.*,                        §
                                           §
          Defendants.                      §

## REPORT AND RECOMMENDATION

Proceeding pro se and *in forma pauperis*, Plaintiff Matthew Contreras filed this action

under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with an

incident at the Terry County Jail (Jail) in Brownfield, Texas. Contreras asserts that on May 30,

2019, Sergeant Zeke, Officer Taylor, and Officer Wauson[1] used excessive force. *See* Compl. 3–

4, ECF No. 1.[2] Contreras asks the Court to award monetary damages and order Defendants to

provide "life time eye care." *Id.* at 4. As of this date, all parties have not consented to proceed

before the magistrate judge. Upon review of the pleadings, it is the opinion of the undersigned

that this matter must be transferred to the district judge for further proceedings.

### I.    Procedural History

#### A. Preliminary Screening

Contreras filed his Complaint on February 12, 2021, and the United States District Judge

transferred this case to the undersigned United States Magistrate Judge for further proceedings.

---

[1] Contreras originally named "Officer Watson" as a Defendant in his Complaint (ECF No. 1) but clarified at the *Spears* hearing that Defendant's surname is "Wauson." Tr. 24:20–:22, ECF No. 30.

[2] Page citations to Contreras's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

ECF Nos. 1, 8.  The undersigned thereafter reviewed Contreras's Complaint, as well as authenticated records from Terry County, and held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), where Contreras appeared and testified under oath.

After considering the allegations in Contreras's Complaint, his responses at the *Spears* hearing, authenticated records provided by Terry County, and applicable law, the undersigned determined that Contreras's excessive force claim against Defendants Zeke, Taylor, and Wauson survived preliminary screening.  ECF No. 19.  The Court entered an order on October 13, 2021, directing service and requiring an answer or other responsive pleading from Defendants regarding that claim.  *Id.*; *see also* ECF No. 24.

On December 6, 2021, the United States Marshal (USM) served Defendant Wauson (ECF No. 28), but the USM was unable to serve Defendants Taylor and Zeke.[3]  ECF Nos. 21, 22.  Defendant Cody Wauson timely filed an answer (ECF No. 32) and partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  ECF No. 31.  Contreras did not file a response to Defendant Wauson's Motion to Dismiss.

As to Defendants Zeke and Taylor, the Court entered an order advising Contreras that it had attempted to have service perfected on Defendants, and Contreras now bore the responsibility of providing the Court with their current addresses.  ECF No. 26.  Further, the Court admonished Contreras that his failure to provide Defendants' addresses would result in dismissal of his claims against those Defendants.  *Id.*

---

[3] The authenticated records reflect that an officer by the name of Louis Zampella was involved in the incident of which Contreras complains. At the *Spears* hearing, however, the Court asked whether Contreras intended to name Zampella as a Defendant, and Contreras expressly denied that Zampella and Zeke were the same person. Tr. 9:2–10:25. Contreras stated that he saw the officer's badge and obtained Zeke's name from the badge. Tr. 10:19–:24. As to Defendant Taylor, Terry County advised the USM that Taylor "no longer works with Terry County Sheriff's Office." ECF No. 21.

On December 7, 2021, the Court sua sponte granted Contreras a twenty-one day extension of time—i.e., until December 28, 2021—to provide the information required by the November 1 order. ECF No. 29. The Court again cautioned Contreras that his failure to provide the information would result in dismissal of Contreras's claims against Defendants Zeke and Taylor in accordance with Fed. R. Civ. P. 4(m).

On January 4, 2022, Contreras filed a motion for extension of time to locate Defendants Zeke and Taylor. ECF No. 34. The Court granted the motion, finding good cause under Rule 4(m) to extend the time until February 11, 2022. ECF No. 35. The Court cautioned Contreras, however, that should he fail to provide Defendants' locations by February 11 it would recommend dismissal of Defendants Zeke and Taylor. *Id.* As of the date of this Report, Contreras has not filed any information concerning Defendants' locations.

**B. Defendant Wauson's Motion to Dismiss**

Calling Contreras's allegations "vague," Defendant Wauson's motion presumes Contreras attempts to assert claims against him in his official and individual capacities. Def.'s Mot. to Dismiss 1, ECF No. 31. Defendant Wauson seeks dismissal of Contreras's claim under Federal Rule of Civil Procedure 12(b)(6), arguing that to the extent Contreras asserts a claim against him in his official capacity—i.e., a claim against Terry County—such claim must be dismissed because Contreras has not pleaded facts supporting a municipal liability claim. *Id.* at 2–8. Specifically, Defendant Wauson avers that Contreras has not alleged Wauson's actions were the result of an official policy or custom formally adopted by Terry County. *Id.* at 6–7. Instead, Contreras only pleads facts related to an isolated incident, which Defendant Wauson contends cannot support a municipal liability claim. *Id.* at 5–6.

3

## II.    Contreras's Allegations

Contreras alleges that on May 30, 2019,[4] he had returned from recreation and was hot, causing him to ask Officer Taylor to open the "bean slot" (i.e., the slot in a cell door where jailers pass food trays) to allow air to flow through his cell. Compl. 4, 6; Tr. 11:5–:21. According to Contreras, Officer Taylor refused his request and ordered Contreras to enter his cell. Tr. 11:5–:21, 12:10–:18; Compl. 6. In response, Contreras states that he again asked Officer Taylor to open the bean slot, but Taylor declined. Tr. 12:10–:13, 13:1–:5; Compl. 6. Contreras believes Officer Taylor may have ordered him to enter his cell once more and, after Contreras refused, Officers Taylor and Wauson began using force. Tr. 12:10–:18, 13:1–:12; Compl. 6.

According to Contreras, the three individuals "wrestled," and they eventually ended up in "C-pod," i.e., around the corner and away from the entrance to his cell. Tr. 13:13–:22, 15:22–16:23; *see* Compl. 4, 6–7. Contreras contends that during the scuffle, Officers Taylor and Wauson slammed him into the wall, causing a laceration above his left eye that required stitches. Tr. 14:8–:14, 16:9–17:25, 21:13–22:13; *but see* Compl. 6–7 (averring that the officers tackled him "to the floor causing [him]" suffer a laceration above his left eye). Further, Contreras avers that Officer Taylor "choked him out" while Officer Wauson pulled Contreras's hands behind his back and applied handcuffs. Tr. 16:7–:12, 19:6–:13. After being handcuffed and while lying on his stomach, Contreras claims that Sergeant Zeke came around the corner (in C-pod, rather than in front of his cell) and shot him "point blank" in the left eye with a pepper ball gun. Tr. 18:9–20:16; Compl. 4, 7. Contreras described the pepper ball gun as being very near his face. Tr. 19:3–:14.

---

[4] In his Complaint Contreras alleged the incident occurred on July 25, 2019. Compl. 4. The authenticated records, however, show that the incident occurred May 30, 2019. Contreras stated that he could not remember the exact date but had no reason to dispute the May 30 date. Tr. 8:23–9:1.

4

Contreras maintains that as a result of Sergeant Zeke shooting him with a pepper ball, he suffered extensive damage to his left eye.  Tr. 19:20–20:2, 20:20–21:3, 22:12–:18.  Specifically, Contreras alleges that a doctor "put a lense [sic] in [his] left eye to try to help [his] vision," but he continues to experience:  (1) blurred vision and/or blindness; (2) "severe optic nerve damage"; (3) lack of depth perception; and (4) a loss of muscle control, in that his left eye will not open on its own—Contreras has "to physically open it with [his] hand."  Compl. 4, 7.  Contreras avers that these are "life long injur[ies]" and he is "disabled."  *Id.* at 7.

Finally, Contreras asserts that after being struck in the eye with the pepper ball, he "blacked out."  Tr. 10:17–:18, 13:23–14:3, 20:11–:19.  When he awoke, the officers had moved him to the "holding area" near the sally port, and Officer Taylor was kicking him.  Tr. 13:23–14:7, 23:1–:10; Compl. 7.  Contreras concedes, however, that he did not suffer any injury due to this purported use of force.  Tr. 23:18–:21.

## III.   Discussion

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if, *at any time*, the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

### A.  Defendant Wauson's Rule 12(b)(6) Motion to Dismiss

#### *1.  Standard*

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see*

5

*Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility" (quoting *Iqbal*, 556 U.S. at 678)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### 2. Official or Individual Capacity

The Court's order requiring Defendant Wauson to answer Contreras's claim did not expressly address the question of whether Contreras sought relief against Wauson in his official or individual capacity. *See* ECF Nos. 19, 24. Indeed, Contreras does not specify—either in his Complaint or his *Spears* hearing testimony—whether he intended to sue Defendant Wauson in his official capacity, individual capacity, or both. *See* Compl. 3–4, 6–9.

While "official capacity is presumed" when a plaintiff does not otherwise specify, this Court has nevertheless liberally construed such complaints as alleging both individual and official capacity claims against the official. *See Phelan v. Norville*, No. 5:10-CV-029-C, 2010 WL 11515176, at *3 (N.D. Tex. Nov. 5, 2010) (citation omitted); *LaFontaine v. Mail Room Emps.*, No. 501CV220C, 2004 WL 1380521, at *3 (N.D. Tex. June 21, 2004) ("Although Plaintiff does not specifically state whether he is suing the Defendants in their official capacities, individual capacities, or both, the Court shall construe his complaint to raise both official and individual capacity claims."); *see also Bazan v. Whitfield*, No. 5:15-CV-185-BQ, 2017 WL 568863, at *2 (N.D. Tex. Jan. 13, 2017) (acknowledging that defendants' motion presumed both official and individual capacity claims given the complaint's ambiguity, and court also "[l]iberally constru[ed] [plaintiff's] Complaint" as asserting claims "in both an official and individual capacity"), *R. & R. adopted by* 2017 WL 564673 (N.D. Tex. Feb. 10, 2017). Because Wauson's Complaint does not specifically state whether he intends to sue Defendant Wauson in his official capacity, individual capacity, or both, the Court liberally construes his Complaint as alleging a claim against Defendant Wauson in both capacities.

3. *Any claim against Defendant Wauson in his official capacity should be dismissed.*

Defendant Wauson argues that, to the extent Contreras asserts a claim against him in his official capacity, such claim must be dismissed because he has failed to state a claim upon which relief may be granted. Def.'s Mot. to Dismiss 8. Specifically, Defendant Wauson argues Contreras has merely alleged "nothing more than an isolated incident," and Contreras has not asserted that Defendant Wauson's conduct is the result of an official policy or custom. *Id.* at 4. Consequently, Defendant Wauson asserts that any official capacity claim, which amounts to a claim for municipal liability, must be dismissed. *Id.* The Court agrees.

7

A claim against Defendant Wauson in his official capacity—an officer at the Jail—is tantamount to a claim against Terry County. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)); *Bennett v. Pipin*, 74 F.3d 578, 584 (5th Cir. 1996) ("When a plaintiff sues a county or municipal official in [his] official capacity, the county or municipality is liable for the resulting judgment and, accordingly," the suit amounts to a suit against the county or municipality.). "Congress did not intend to impose liability on a municipality[, however,] unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (emphasis omitted) (quoting *Monell*, 436 U.S. at 694). Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Rather, "the [employee's] unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

As a result, to succeed on his claims against Defendant Wauson in his official capacity, Contreras must show the following: "(1) that [a] municipal employee violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528–29 (5th Cir. 1999). Here, Contreras makes no allegations that Defendant Wauson acted pursuant to a policy adopted or promulgated by Terry County, or a custom or practice so pervasive it had the force of policy or

law. Contreras's Complaint similarly contains no assertions that Defendant Wauson is a county policymaker or that he enacted a policy that was the "moving force" behind the purported constitutional violation. Moreover, Contreras alleges only an isolated incident, which is not sufficient to establish a municipal policy or custom. *Bennett*, 728 F.2d at 768 n.3 ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."). Accordingly, to the extent Contreras asserts a claim against Defendant Wauson in his official capacity, the undersigned recommends that the district judge grant Wauson's motion and dismiss such claim.

## B. Contreras's Failure to Timely Serve Defendants Zeke and Taylor

Rule 4(m) of the Federal Rules of Civil Procedure provides that "the court—on motion or on its own after notice to the plaintiff—*must* dismiss" without prejudice claims against any defendant who is not served within 90 days after a complaint is filed. Fed. R. Civ. P. 4(m) (emphasis added). Upon a finding of good cause, however, "the court must extend the time for service for an *appropriate period*." *Id.* (emphasis added).

The Court originally directed the USM to serve Defendants Taylor and Zeke on October 13, 2021 (ECF No. 19), but on October 26, 2021, the USM returned the summonses unexecuted. ECF No. 21, 22. Thus, Contreras has been on notice of the defects in service since October 26. Then, on November 1, the Court ordered Contreras to provide Defendants' last-known address within thirty days of the date of the order and cautioned him that his failure to do so could result in dismissal of Defendants. *See* ECF No. 26. The Court thereafter provided Contreras two extensions under Rule 4(m) in which to locate Defendants Taylor and Zeke. *See* ECF Nos. 29, 35. Almost four months have passed since Contreras first became aware of the service defects, which the Court has provided Contreras several opportunities to cure. Contreras has not supplied any

9

location information to the Court. *See* ECF Nos. 27, 34. Under these circumstances, the undersigned finds dismissal of Defendants Taylor and Zeke appropriate.

The Court reaches this conclusion despite the fact that the statute of limitations may bar Contreras's claims against Defendants Taylor and Zeke should Contreras elect to re-file. *See Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016) (applying a more stringent standard for dismissals that are effectively with prejudice due to the statute of limitations). "Dismissal with prejudice is appropriate only when there is a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice." *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018) (internal quotation marks and citation omitted); *accord Nottingham*, 837 F.3d at 441. "In most cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct." *Griggs*, 905 F.3d at 844 (quoting *Stearman v. Comm'r*, 436 F.3d 533, 535 (5th Cir. 2006)).

Despite ample time to supply the necessary addresses, and extensions by the Court beyond the time period contemplated by the rule, Contreras has not timely done so. Contreras bears final responsibility for accomplishing service of process upon Defendants (*see* Fed. R. Civ. P. 4(c)(1))— as such, the resulting delay is ultimately and solely attributable to Contreras. *See Coleman v. Groom*, No. 3:19-CV-1155-N-BK, 2019 WL 5069065, at *3 (N.D. Tex. Sept. 18, 2019) (observing that because he was proceeding pro se, plaintiff's "recalcitrance [was] attributable to [him] alone"), *R. & R. adopted by* 2019 WL 5068169 (N.D. Tex. Oct. 9, 2019), *appeal dismissed*, 847 F. App'x 219 (5th Cir. 2021). Moreover, this case is ready to proceed past the initial pleading stage and the

appearing Defendant would be prejudiced by further delay. Thus, the undersigned recommends the district judge dismiss Defendants Taylor and Zeke from this action.

### C. Contreras's Excessive Use of Force Claim Against Defendant Wauson

Contreras's use of force claims arise under the Fourteenth Amendment because the incident occurred while he was a pretrial detainee. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). To sufficiently state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397.

Accepting Contreras's allegations as true, as the Court must at this stage of the proceedings, his factual assertions state a claim sufficient to survive preliminary screening, i.e., a Fourteenth Amendment excessive force claim against Defendant Wauson. Contreras acknowledges that he refused orders to enter his cell and, after Defendants Taylor and Wauson began using force (ostensibly to gain compliance), the three individuals wrestled. Tr. 11:5–:21, 12:10–:18, 13:1–:22,

11

15:22–16:23; Compl. 4, 6–7.  Thus, the fourth, fifth, and sixth *Kingsley* factors weigh in favor of

Defendant Wauson.  *See, e.g.*, *Reeves v. Franey*, No. 3:18-CV-03232-X, 2021 WL 409737, at \*4

(N.D. Tex. Feb. 5, 2021) (concluding the fourth, fifth, and sixth *Kingsley* factors favored

defendants, where plaintiff refused commands to return to his cell, refused restraint, and attacked

officers); *Calhoun v. Wyatt*, No. 6:11cv4, 2013 WL 1882367, at \*6 (E.D. Tex. May 2, 2013)

(noting that inmate's refusal to obey orders "set the stage for the use of force").

    But Contreras also avers that Defendant Wauson slammed him into the wall, causing a

laceration above his left eye that required stitches.  Tr. 14:8–:14, 16:9–17:25, 21:13–22:13; *see*

Compl. 6–7.  "While no quantum of injury is required, the extent of [Contreras's] alleged injur[y]

. . . suggests that more than a *de minimis* amount of force was used by" Defendant Wauson.  *Drumm*

*v. Valdez*, No. 3:16-CV-3482-M-BH, 2019 WL 7494443, at \*5 (N.D. Tex. Dec. 3, 2019), *R. & R.*

*adopted by* 2020 WL 85163 (N.D. Tex. Jan. 6, 2020).  And at this stage, based only on the

pleadings, the Court cannot determine what steps, if any, Defendant Wauson took to temper the

amount of force used and whether that force was objectively reasonable based on Contreras's

actions.  The first, second, and third *Kingsley* factors (i.e., the relationship between the need for

the use of force and the amount of force used, the extent of plaintiff's injury, and any effort made

by the officer to temper or limit the amount of force) therefore weigh in Contreras's favor.  Based

on the foregoing, and construing these factors and Contreras's allegations in his favor, the

undersigned finds Contreras has pleaded facts sufficient to survive preliminary screening.  *See,*

*e.g.*, *id.* (finding plaintiff's excessive force claim survived screening, where plaintiff's allegations,

taken as true, "reasonably suggest[ed] that the use of force was not rationally related to a legitimate

nonpunitive governmental purpose, was excessive in relation to that purpose, or was objectively

unreasonable" (internal quotation marks and citation omitted)); *Ryals v. El Paso Cnty.*, No. EP–

13–CV–289–PRM, 2015 WL 3540951, at *5–6 & n. 10 (W.D. Tex. June 3, 2015) (finding detainee's claim that defendants "slammed him against a wall and a bench more than once and twisted his handcuffs causing him pain and injury" stated sufficient claim for excessive force, particularly where detainee's claimed injuries suggested significant force was used).

## IV.    Recommendation

The undersigned recommends that the United States District Judge grant Defendant Wauson's Motion to Dismiss Contreras's claim against Wauson in his official capacity.  The undersigned further recommends that the district judge dismiss Defendants Zeke and Taylor in accordance with Rule 4(m).  Finally, the undersigned recommends that the district judge enter a limited scheduling order, requiring Defendant Wauson to file a motion for summary judgment with supporting evidence, for the purpose of making a preliminary determination on qualified immunity.  *See* ECF No. 32, at 2 (raising several defenses, including qualified immunity).  Alternatively, the undersigned recommends that a Rule 16 scheduling order be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

## V.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March __9__, 2022.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE